IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SAMUEL BRAY, | | |
| | Petitioner, | No. CIV S-02-2540 MCE PAN P |
| vs. | | |
| D. RUNNELS, Warden, | | |
| | Respondent. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| _____/ | | |

        Petitioner is a state prisoner proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2000 conviction on three counts of lewd conduct with a child under 14 and one count of failing to register as a sex offender.  <u>See</u> Cal. Pen. Code §§ 288(a), 290(g)(2).  Petitioner was sentenced to three consecutive terms of 75 years to life, one consecutive term of 25 years to life, plus three five year enhancements and six one year enhancements.  Cal. Pen. Code §§ 288(a), 290(g), 667(a), (b).

        In his November 25, 2002 petition, petitioner seeks relief on the ground that the minimum constitutional criteria for use of a prior sex-related incident as disposition evidence were not met in this case.  (Petition at 15.)

/////

/////

Petitioner filed a direct appeal. The Court of Appeals for the Third Appellate District struck three 1-year enhancements but otherwise affirmed the judgment in a reasoned opinion. (Ex. B, Answer.) Petitioner filed a petition for review in the California Supreme Court. (Ex. C, Answer.) The court denied review without comment. (Ex. D, Answer.) Petitioner did not seek habeas relief in state court.

FACTS[1]

> In the summer of 1998, Brittany was nine years old. [Petitioner] was her mother's boyfriend. About three or four times a week, [petitioner] would spend the night with Brittany, her mother, and her brothers.
>
> Approximately two weeks to a month after [petitioner] first started spending the night, Brittany went into her mother's bedroom and found [petitioner] there alone. [Petitioner] touched her chest under her clothes.
>
> On a second occasion, [petitioner] touched Brittany on her chest under her clothes when he came upon her alone in the kitchen.
>
> On yet another occasion, as she was leaving the house, Brittany's mother asked Brittany to bring [petitioner] a cup of water. When she brought the water to [petitioner] in the bedroom, he made Brittany feel his private part.
>
> One time, [petitioner] also kissed Brittany and put his tongue in her mouth. And on many occasions, [petitioner] touched her breasts and vagina on top of her clothes. Some of the touchings occurred when Brittany would share the bed with her mother and [petitioner].
>
> Brittany's mother broke off her relationship with [petitioner] in September or October of 1998, when [petitioner] put his fist through a door during an argument.
>
> * * *
>
> At trial, Brittany testified about the molestations, her mother's relationship with [petitioner], and her disclosure of the incidents to her teacher and brother.

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Samuel Bray, No. C037432 (May 30, 2002), a copy of which is attached as Exhibit B to Respondent's Answer, filed January 31, 2003.

2

Brittany's fourth and fifth grade teacher testified regarding Brittany's disclosure in December 1998 that [petitioner] had been "bothering her," which prompted the teacher to contact a counselor. She also described how Brittany had changed from an outgoing, lively child in the fourth grade to a quieter, more serious child in the fifth grade.

Brittany's mother described the circumstances of her involvement with [petitioner], and Brittany's disclosure to her that [petitioner] had touched her.

David Love, a family therapist, testified as an expert on child sexual abuse accommodation syndrome (CSAAS). [The court discussed] the details of Mr. Love's testimony in connection with [petitioner's] challenges to it.

The prosecution also called a police officer, who was present during an interview of Brittany by a social worker in January 1999. The interview, in which Brittany recounted the touching incidents, had been videotaped and was played to the jury.

Another police officer, responsible for tracking sex offender registrations, testified that [petitioner] did not register on his birthday in October 1998, as required, and that when interviewed in Oklahoma in June 2000, [petitioner] admitted that he had not registered.

Lawanna -- another molestation victim -- and her mother, Elizabeth, testified about the molestations that led to [petitioner's] conviction in 1982. Lawanna testified that when she was 6 or 7 years old, [petitioner] was her mother's boyfriend and lived with them for two to three years. [Petitioner] initially molested her by rubbing her legs and kissing her on the ear and mouth. [Petitioner] then began touching her breasts on top of her clothes. One time, [petitioner] also touched Lawanna's vagina under her clothes. At the same time, he caused her to put her hand inside his pants and made her rub his penis. On another occasion, [petitioner] came into the kitchen in his robe, pushed Lawanna to her knees, and tried to force his penis into her mouth. She kept her mouth tightly closed, and [petitioner] stopped when Lawanna's mother called him. At a subsequent time, [petitioner] put Lawanna on the bed in her mother's bedroom, pulled down his pants and her panties, and put his penis in her vagina. And yet another time, when Lawanna's cousin was spending the night, [petitioner] came into the room, pulled Lawanna's pajamas up and her panties down, turned her over on her stomach, got on top of her, and started "humping" her.

Lawanna's mother, Elizabeth, described how she woke up one night, got out of bed, and saw [petitioner] in Lawanna's room lying on top of her. [Petitioner] appeared to hear Elizabeth and came out of the room. When Elizabeth asked [petitioner] what he

was doing in her daughter's room, he said he was checking on Lawanna's water bed.

After [petitioner] left for work the next morning, Lawanna told her mother the details of what had happened when [petitioner] was in her bedroom. Elizabeth called a social worker. She also reported [petitioner] to the police.

[Petitioner] testified, denying that he had molested Lawanna or that he told Elizabeth or anyone else that he did. But he admitted that a jury had convicted him of molesting Lawanna in 1982, and that he was required to register as a sex offender. He admitted that he had failed to register in October 1998.

[Petitioner] also denied touching or molesting Brittany, or kissing her on the lips. Although [petitioner] testified that he had spent three or four nights a week at Brittany's house, he said that Brittany never spent the night in bed with her mother and him. [Petitioner] recalled that once Brittany's mother had Brittany bring him a glass of water. But [petitioner] testified that he was never left alone with Brittany.

[Petitioner] also called the police officer who witnessed Brittany's interview with the social worker. The officer testified about a discrepancy regarding the mother's statements, as well as his efforts to locate [petitioner] at his own mother's house thereafter. [Petitioner] then called his own mother and sister to dispute the officer's version of events regarding whether the police searched the house.

The jury convicted [petitioner] on the three counts of lewd acts with a child under the age of 14 and the count of failing to register as a sex offender, but acquitted him of the count of continuous sexual abuse of a child.

[Petitioner] waived jury trial on the prior convictions, and the court found that the prior conviction allegations were true as charged in counts 2, 3, 4, and 5.

(People v. Samuel Bray, slip op. at 3-4; 5-8.)

## ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

/////

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under section 2254(d). Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

/////

II. <u>Petitioner's Claim</u>

Petitioner does not challenge the constitutionality of Cal. Evidence Code § 1108. Petitioner claims that under state law, Cal. Evidence Code § 1108 should be interpreted as requiring expert testimony to prove petitioner had a disposition to commit sexual assaults.

The California Supreme Court denied petitioner's petition for review on August 14, 2002, without comment. The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court rejected this claim as follows:

> [Petitioner] explains: [T]he use of evidence of past conduct authorized under section 1108 is to show disposition. This is a psychological trait, and as such is subject to the normal foundational requirement for any subject of expert testimony." [Petitioner] concludes: "[T]here was a lack of foundational evidence in the form of expert testimony to show that [petitioner] actually ha[d] any such disposition."
>
> [Petitioner] cites no authority that Evidence Code section 1108 requires such a foundation. Instead, he draws a parallel to the statute regarding sexually violent predators, which requires expert opinion that the defendant has a mental disorder. (Welf. & Inst. Code, § 6600, subds. (a)(1), (c), (3).) [Petitioner] argues that the "foundational requirement for section 1108 evidence should be no different."
>
> This contention has no merit. There is no parallel between the language of Evidence Code section 1108 and the statute governing commitment proceedings for sexually violent predators. (Welf. & Inst. Code, § 6600, et seq.) The sexually violent predator statute expressly requires that before a commitment petition may be filed, two psychiatrists or psychologists evaluate the defendant and agree that he or she has a diagnosed mental disorder that is likely to lead to acts of sexual violence without appropriate treatment and custody. (Welf. & Inst. Code, § 6601, subd. (d).) By contrast, Evidence Code section 1108 is devoid of any mention of expert testimony as a predicate to the admissibility of evidence of other sex offenses. Instead, the narrowly drawn statute provides an exception to the general inadmissibility of evidence of a person's character to prove conduct on a specified occasion (Evid. Code § 1101) by allowing evidence "of another sexual offense or offenses. . . if the evidence is not inadmissible pursuant to [Evidence Code] section 352." (Evid. Code, § 1108, subd. (a).) It does not also authorize expert testimony. It is not for this court to insert a requirement into Evidence Code section 1108, which the

> Legislature has chosen to omit. (See Civ. Proc. Code, § 1858.) "[C]ourts do not sit as councils of revision, empowered to rewrite legislation in accord with their own conceptions of prudent public policy." (*United States v. Rutherford* (1979) 442 U.S. 544, 555 [61 L.Ed.2d 68, 78].)
>
> Indeed, the expert testimony that [petitioner] proposes to require under Evidence Code section 1108 might very well constitute error if permitted. In *People v. McFarland* (2000) 78 Cal.App.4th 489, 493, the court held that Evidence Code section 1108 "does not authorize an expert to render an opinion about the defendant's sexual propensity during the prosecution's case-in-chief." There, the defendant was charged with annoying or molesting a child under section 647.6, which required proof that his conduct was motivated by an unnatural or abnormal sexual interest in the victim. (*People v. McFarland, supra*, 78 Cal.App.4th at p. 494.) A psychiatrist testified for the prosecution that the defendant had a mental disorder and opined that the defendant was motivated by an abnormal or sexual interest in children when he touched the child victim. (Id. at pp. 492-493 & fn.2.) The court said the witness had offered "an expert *opinion* on the ultimate issue that [defendant] harbored an unnatural or abnormal sexual interest" in a child victim (*id.* at p. 495, original italics), and rejected the notion that opinion testimony regarding character is made admissible by Evidence Code section 1108. (*People v. McFarland, supra,* 78 Cal.App.4th at p. 495.) The Court concluded that while Evidence Code section 1108, subdivision(a), allows "'evidence of the defendant's commission of another sexual offense or offenses,'" expert opinion about the defendant's sexual propensity "went far beyond any description of prior offenses authorized" by that provision. (*People v. McFarland, supra,* 78 Cal.App.4th at p. 495.)
>
> [The court concluded] that nothing in Evidence Code section 1108 authorizes, let alone requires, expert testimony that [petitioner] had a sexual mental disorder.

(People v. Bray, slip op. at 18-20.)

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fundamentally fair trial guaranteed by due process. See Pulley v. Harris, 465 U.S. 37, 41 (1984); Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991). Accordingly, a federal court cannot disturb a state court's decision to admit evidence on due process grounds unless the admission of the evidence was "arbitrary or so

7

1 prejudicial that it rendered the trial fundamentally unfair." See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995); Colley v. Sumner, 784 F.2d 984, 990 (9th Cir. 1986). See also Mancuso v. Olivarez, 292 F. 3d 939, 956 (2002) (a writ of habeas corpus will be granted for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable and ... the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings.'" (quoting Barefoot v. Estelle, 463 U.S. 880, 899 (1983)). In addition, in order to obtain habeas relief on the basis of evidentiary error, petitioner must show that the error was not harmless under Brecht v. Abrahamson, 507 U.S. 619 (1993). In order to grant relief, the habeas court must find that the error had "'a substantial and injurious effect' on the verdict." Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir. 2001) (quoting Brecht, 507 U.S. at 623).

Under Ninth Circuit law, the admission of "other acts" evidence violates due process only if there were no permissible inferences the factfinder could have drawn from the evidence. See McKinney v. Rees, 993 F.2d 1378, 1381 (9th Cir. 1993) (question is "whether any inferences relevant to a fact of consequence may be drawn from each piece of the evidence, or whether they lead only to impermissible inferences about the defendant's character"); Jammal, 926 F.2d at 920 ("[e]vidence introduced by the prosecution will often raise more than one inference, some permissible, some not; we must rely on the jury to sort them out in light of the court's instructions"). See also United States v. LeMay, 260 F.3d 1018, 1027 (9th Cir. 2001) (evidence of prior similar crimes "will only sometimes violate the constitutional right to a fair trial, if it is of no relevance, or if its potential for prejudice far outweighs what little relevance it might have").

In LeMay the Ninth Circuit Court of Appeals held there is nothing fundamentally unfair about allowing propensity evidence so long as protections, such as those provided under Federal Rule of Evidence 403, remain in place to ensure that devastating evidence of little

probative value will not reach the jury. Id., 260 F.3d at 1026.[2] There is no exclusive list of factors that courts should evaluate in determining whether to admit evidence of a defendant's prior acts of sexual misconduct. Rather, judges should consider factors relevant to individual cases, such as (1) the similarity of the prior acts to the acts charged; (2) the closeness in time of the prior acts to the acts charged; (3) the frequency of the prior acts; (4) the presence or lack of intervening circumstances and (5) the necessity of the evidence beyond the testimony already offered at trial. LeMay, 260 F.3d at 1028; Doe ex rel. Rudy-Glanzer v. Glanzer, 232 F.3d 1258, 1268 (9th Cir. 2000) (citing United States v. Guardia, 135 F.3d 1326, 1330 (10th Cir. 1998)). "A court should pay 'careful attention to both the significant probative value and the strong prejudicial qualities' of that evidence." LeMay, 260 F.3d at 1027 (quoting Glanzer, 232 F.3d at 1268).

Here, the prior crimes evidence against petitioner was relevant to the charged crimes. Thus, to the extent petitioner challenges the use of the prior sexual offenses violated his due process rights (petition at 15), his claim should fail.

Moreover, the United States Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conduct in conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." Garceau v. Woodford, 275 F.3d 769, 774 (9th Cir. 2001), overruled on other grounds by Woodford v. Garceau, 538 U.S. 202 (2003). In fact, the Supreme Court has expressly left open this question. See Estelle v. McGuire, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"). Petitioner has provided no Supreme Court authority for his novel idea that courts are required to

---

[2] Fed. R. Evid. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

support this disposition evidence by expert testimony.  Accordingly, the state court's denial of this claim was not contrary to United States Supreme Court precedent.

Further, any error in admitting this evidence did not have "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993). See also Gordon v. Duran, 895 F.2d 610, 613 (9th Cir. 1990)(admission of prior acts of misconduct to prove intent did not violate due process).  There was direct evidence against petitioner, consisting of the victim's testimony (RT 272-330), the victim's teacher's testimony (RT 250-65) and the testimony of the victim's mother (RT 449-67.)  Law enforcement officer Duane Cantwell testified he was present during the social worker's interview with the victim.  (RT 373.)

Any threat of improper prejudice flowing from the testimony was mitigated by the trial court's instructions directing the jury to that if they found petitioner had committed a prior sexual offense, the jury may, but was not required to, infer petitioner had a disposition to commit sexual offenses.  (RT 687-88.)  The jury was further instructed that if the jury found petitioner had this disposition the jury may, but was not required to, infer that he was likely to commit and did commit the crimes for which he was accused.  (RT 688.)  However, the jury was cautioned that if the jury found he committed a prior sexual offense, that finding by itself was not sufficient to prove beyond a reasonable doubt that petitioner committed the charged crimes.  (RT 688.)  The jury was instructed that the weight and significance of the evidence, if any, was for the jury to decide.  (RT 688.)  In addition, at the time certain evidence was admitted for a limited purpose, the jury was cautioned that evidence could not be considered for any other purpose.  (RT 685.)  The jury was reminded that this evidence could not be considered for any purpose except the limited purpose for which it was admitted.  (RT 685.)  The jury is presumed to have followed these instructions. Old Chief v. United States, 519 U.S. 172, 196-97 (1997); United States v. Reed, 147 F.3d 1178, 1180 (9th Cir. 1998).

/////

For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 7, 2006.

UNITED STATES MAGISTRATE JUDGE

004;001; bray2540.157